CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

JUN 2 3 2023

LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 5:17-CR-11 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| ANTWAN LUCAS, ) | Chief United States District Judge |
| Defendant-Petitioner ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Antwan Lucas's pro se motion for compassionate release filed on May 21, 2021. ECF No. 618. The Federal Public Defender was given an opportunity to supplement Lucas's petition and declined to do so. ECF No. 630. The government responded in opposition to the motion on June 7, 2021. ECF No. 623. For the reasons stated herein, the court will **DENY** Lucas's motion for compassionate release.

I.

On April 24, 2018, Lucas was convicted of conspiracy to distribute 100 grams or more of heroin and sentenced to a term of 108 months to be followed by a 4-year term of supervised release. J., ECF No. 409. Lucas currently is housed at Federal Correctional Institution (FCI) Petersburg Medium and has a projected release date of April 17, 2024.[1] Lucas argues that he had COVID-19 once, with mild symptoms, and is entitled to compassionate release based on his susceptibility to a second COVID-19 infection.

---

[1] See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed June 15, 2023) (search "Antwan Lucas").

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Lucas's request for compassionate release requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Lucas submitted a request for compassionate release to the warden of his facility on April 3, 2021, arguing that the BOP was

not properly protecting him from COVID-19. ECF No. 618-5. The warden of the facility responded with a request that Lucas re-submit his request and specify one of the categories for compassionate release set forth in BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(A) and § 4205(g). ECF No. 618-6. Lucas did not resubmit his request but instead filed his motion for compassionate release.

The government argues that Lucas did not exhaust his administrative remedies because he did not resubmit his request for compassionate release to the warden. Resp., ECF No. 623 at 3. However, at the time the government responded, it did not have the benefit of the Fourth Circuit's decision in Muhammad, which made clear that once a defendant completes the initial step of asking the BOP to file a motion on his behalf and waits 30 days from the receipt of such a request before filing a motion for compassionate relief on his own behalf, he has exhausted his administrative remedies. Muhammad, 16 F.4th at 130–31. Accordingly, because Lucas submitted his request to the warden and waited 30 days before filing his motion, the court finds that he has satisfied the statute's exhaustion requirements.

The court must next consider if it should "reduce the term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission Guidelines Manual ("USSG") § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant

3

is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). The court notes that this policy statement, while governing only for BOP-filed motions for compassionate release, "remains helpful guidance even when motions are filed by defendants." United States v. McCoy, 981 F.3d 271, 280–84, 282 n.7 (4th Cir. 2020).

Lucas argues that because he has already had COVID-19, he is at risk for serious illness if he were to contract the virus again. He also argues that the BOP does not offer adequate protection to inmates to keep them from being exposed to COVID-19.

During the early days of the COVID-19 pandemic, this court found extraordinary and compelling reasons for compassionate release when an inmate showed both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. But the assessment of compassionate release claims based on COVID-19 changed with the advent of vaccines against the disease. According to the Centers for Disease Control and Prevention, all approved vaccines "are safe and effective at protecting people from getting seriously ill, being hospitalized, and dying," and "offer added protection to people who had COVID-19, including protection against being hospitalized from a new infection."[2]

Lucas's medical records indicate that he refused the COVID-19 vaccine when it was offered to him on March 9, 2021. Medical R., ECF No. 623-4 at 41. His refusal of the vaccine undermines his argument that COVID-19 presents a grave danger to him because he has a particularized susceptibility to the disease. In addition, FCI Petersburg, where Lucas is housed,

---

[2] See Ctrs. for Disease Control and Prevention, Benefits of Getting A COVID-19 Vaccine, (updated May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last viewed June 13, 2023).

currently has zero cases of COVID-19 in the facility.[3] The lack of COVID-19 at the facility supports the conclusion that Lucas is not at risk for contracting COVID-19 and that the measures taken at FCI Petersburg are appropriate to deter potential infection in the future. For these reasons, Lucas has not demonstrated that he is at particularized risk for contracting COVID-19. See United States v. Barcliff, No. 2:14-cr-00003, 2023 WL 3066140, at *3 (S.D.W.V. Apr. 24, 2023) (finding that even if inmate's obesity might increase his risk of experiencing serious illness should he contract COVID-19, he could not show a particularized risk when there were zero cases of COVID-19 at his facility); United States v. Trapp, No. 1:19CR54-1, 2023 WL 2978941 at *3 (N.D.W.V. Apr. 17, 2023) (concluding that even though inmate had risk factors of diabetes and hypertension, his conditions were well-treated and there were zero cases of COVID-19 at his facility, making his risk of exposure negligible); United States v. Stewart, No. 3:15cr13, 2022 WL 2070616, at *3 (E.D. Va. June 8, 2022) (finding that the combination of the effectiveness of the vaccine, the high rate of vaccination at inmate's facility, and low number of active COVID-19 cases at facility indicated inmate was not at particularized risk for contracting COVID-19). Accordingly, Lucas fails to demonstrate an extraordinary and compelling reason for compassionate release based on the concern of contracting COVID-19 and the court must **DENY** his motion.

### III.

For the reasons stated, the court **DENIES** Lucas's motion for compassionate release, ECF No. 618. The Clerk is **DIRECTED** to send a copy of this opinion and the accompanying order to Lucas.

---

[3] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last viewed June 15, 2023).

An appropriate order will be entered.

It is so **ORDERED**.

Entered: JUNE 23, 2023

Michael F. Urbanski
Chief United States District Judge